# **<u>Exhibit A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ORMET CORPORATION, et al.[1] | Case No.  13-10334 (MFW) |
| Debtors. | (Jointly Administered) |
| | Re:  D.I. 224 |

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "Motion") (D.I. 224)[2] dated April 12, 2013

of the above-captioned debtors and debtors-in-possession (each a "Debtor" and, collectively,  the

"Debtors") for, among other things, entry of an order (the "Order") (i) approving the sale of

substantially all of the Debtors' assets (the "Sale Transaction") free and clear of all liens, claims,

encumbrances and interests (collectively, the "Encumbrances"), except to the extent set forth in

the Asset Purchase Agreement (the "Asset Purchase Agreement") pursuant to sections 105, 363

and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the

"Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rule 6004-1(b) of the Local Rules of Bankruptcy Practice and

---

[1]   The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Ormet Corporation (2006); Ormet Primary Aluminum Corporation (9779); Ormet Aluminum Mill Products Corporation (9587); Specialty Blanks Holding Corporation (7019); and Ormet Railroad Corporation (0379). The service address for all of the Debtors for purposes of these chapter 11 cases is:  43840 State Route 7, Hannibal, Ohio 43931.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as defined herein), as applicable.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") identified by the Debtors and more fully described in the Asset Purchase Agreement, as amended from time to time, dated as of February 25, 2013 (attached hereto as Exhibit A) by and between the Debtors and Smelter Acquisition LLC (the "Buyer") for the purchase of the Assets[3] and the assumption of the Assumed Liabilities (each as defined in the Asset Purchase Agreement); and (iii) granting certain related relief; and the Court having held a hearing on June 3, 2013 (the "Sale Hearing") to approve the Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the declarations in support thereof, (c) the objections to the Motion, if any, and (d) the arguments of counsel made, and the testimony and other evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and the Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[4]

A.    **Jurisdiction and Venue**.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]    The "Assets" consist of substantially all of the assets of the Debtors.  Assets do not include the Excluded Assets as referenced in section 2.01(b) of the Asset Purchase Agreement.

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

B.     **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion and granted pursuant to this Order are Bankruptcy Code sections 105, 363 and 365, as supplemented by Bankruptcy Rules 2002, 6004, and 6006 and Local Rule 6004-1(b).

C.     **Petition Date**.  On February 25, 2013 (the "Petition Date"), Ormet Corporation and each of its Debtor subsidiaries commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

D.     **Entry of Bidding Procedures Order**.  On March 21, 2013, this Court entered an order (the "Bidding Procedures Order") (D.I. 143) (A) approving bidding and auction procedures (the "Bidding Procedures"); (B) approving an expense reimbursement provision; (C) authorizing the procedures for assumption and rejection of unexpired leases and executory contracts, including notice of proposed cure costs for Assumed Contracts (the "Cure Costs"); (D) approving the form and manner of notice of all procedures, protections, schedules, and agreements; and (E) scheduling the Sale Hearing.

E.     **Compliance with Bidding Procedures Order**.  As demonstrated by (i) any filed declarations, (ii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and the process was conducted in a non-collusive, fair and good faith manner.  The evidence further demonstrates that the Debtors and their professionals have actively marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers.  The evidence further demonstrates that the Buyer and the Consultation Parties acted in compliance with the terms of the Bidding Procedures.  The

evidence further demonstrates that, in accordance with the Bidding Procedures, the Debtors determined that the bid submitted by the Buyer and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures).

F.   **Notice**.  As evidenced by the affidavits of service and publication previously filed with the Court (<u>See</u> D.I. 92, 197, 198, 199, 200, 209, 253, 282, and 293), and based on the representations of counsel at the Sale Hearing, the testimony and other evidence adduced at the Sale Hearing and the record of the Chapter 11 Cases, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale Transaction, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Cost) and the assumption and assignment of the Assumed Contracts has been provided in accordance with Bankruptcy Code sections 102(l), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale Transaction, or the assumption and assignment of the Assumed Contracts or of the objection deadline with respect to the Cure Costs is or shall be required.  With respect to entities whose identities are not reasonably ascertainable by the Debtors, publication of the Sale Notice in:  (i) The Columbus Dispatch, (ii) The Wheeling News Register, (iii) American Metal Market, and (iv) Platt's Metal Daily on March 26, 2013, was sufficient and reasonably calculated under the circumstances to reach such entities.

G.   **Corporate Authority**.  The record reflects that each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset

4

Purchase Agreement, (iii) has taken all corporate action and formalities necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, as required by their respective organizational documents and (iv) no government, regulatory or other consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to enter into the Asset Purchase Agreement and consummate the Sale Transaction.

H.    **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel for the Committee; (iv) those parties who previously executed NDAs as part of the process conducted by Evercore prior to the Petition Date or expressed a bona fide interest in acquiring the Assets in the six (6) months prior to the filing of the Bidding Procedures Motion; (v) all entities known to have asserted any Encumbrances in or upon the Assets; (vi) all federal, state and local regulatory or taxing authorities or recording offices which are reasonably ascertainable by the Debtors to have a known interest in the Assets; (vii) all parties to Assumed Contracts; (viii) the United States Attorney's office (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the Wayzata Entities; (xii) the Wells Entities; (xiii) the Pension Benefit Guaranty Corporation; and (xiv) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases.

I.    **Sale in Best Interest**.  The evidence reflects that consummation of the sale of the Assets at this time is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

J.      **Business Justification**.  The evidence reflects that sound business reasons exist for the Sale Transaction.  Entry into the Asset Purchase Agreement, and the consummation of the transactions contemplated thereby, including the Sale Transaction and the assumption and assignment of the Assumed Contracts, constitutes each Debtor's exercise of sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest.  The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale Transaction.  Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; and (iii) unless the Sale Transaction and all of the other transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, as provided for in the Motion and pursuant to the Asset Purchase Agreement, recoveries to creditors may be diminished.

K.      The terms and conditions of the Asset Purchase Agreement, including, without limitation, the consideration to be realized by the Debtors, are fair and reasonable.  Approval of the Motion, the Asset Purchase Agreement and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

L.      **Arms-Length Sale**.  The evidence demonstrates that the Asset Purchase Agreement was negotiated, proposed and entered into, by the Debtors and the Buyer without collusion, in good faith and from arm's-length bargaining positions.  Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to

be avoided under 11 U.S.C. § 363(n). Specifically, the Buyer has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Buyer and the Debtors.

M.    **Good Faith Buyer**.  The evidence demonstrates that the Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Assets; (ii) the Buyer complied in all respects with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale Transaction have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the  negotiation and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person.  The Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

N.    **Credit Bid**.  The evidence demonstrates that the Prepetition Term Loan Lenders are secured creditors of the Debtors, holding valid, binding, enforceable and perfected security interests in, on and against the Debtors, their estates and property of the estates, arising in

connection with the Prepetition Term Loan Agreement and the DIP Term Loan Agreement, respectively.  The Prepetition Term Loan Lenders hold an allowed secured claim in the aggregate amount of not less than $139,518,196.57 (the "<u>Allowed Prepetition Claim</u>"), which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the Final DIP Financing Order (the "<u>Allowed Additional Postpetition Claim</u>" and together with the Prepetition Allowed Term Loan Claim, the "<u>Allowed Prepetition Secured Claim</u>"), and pursuant to the Bidding Procedures and the Final DIP Financing Order were authorized to credit bid any or all of such Allowed Prepetition Secured Claim at the Auction.

O.      Pursuant to its agreement under the Asset Purchase Agreement and Bankruptcy Code sections 363(b) and 363(k), the Buyer credit bid $130 million of the Allowed Prepetition Secured, which credit bid was a valid and proper offer pursuant to the Bidding Procedures Order (the "<u>Credit Bid</u>").  The Prepetition Term Loan Agent's (as defined in the Final DIP Financing Order, the "<u>Agent</u>") submission of the Credit Bid on behalf of the Prepetition Term Loan Lenders is authorized pursuant to the terms of the Prepetition Term Loan Agreement and the Final Financing Order, as applicable.  Subject to the occurrence of the Closing Date (as defined below), the Credit Bid is binding on the Prepetition Term Loan Lenders.

P.      **<u>Free and Clear</u>**.  The Debtors may sell the Assets free and clear of all obligations, liabilities and Encumbrances (other than Permitted Encumbrances and the Assumed Liabilities) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Encumbrances who did not object, withdrew, or failed to prosecute

objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to Bankruptcy Code section 363(f)(2).  Those holders of Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and such objections are overruled.

Q.      The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated hereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Assets were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Buyer with respect to the Assets, to the Permitted Encumbrances and the Assumed Liabilities), including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if the Buyer would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability (subject only, in the case of the Buyer with respect to the Assets, to the Permitted Encumbrances and the Assumed Liabilities).  The Buyer will not consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Buyer, its affiliates, its present or contemplated members or shareholders, or the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability.

R.      Not transferring the Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (subject only, in the case of the Buyer with respect to the Assets, to the Permitted Encumbrances) including, without limitation, rights or claims based on any taxes, successor or transferee liability, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

S.      Without limiting the generality of the foregoing, none of the Buyer, its respective affiliates, their respective present or contemplated members or shareholders, or the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests relating to any U.S. federal, state or local income tax liabilities, that the Debtors incur in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

T.    **Assumption of Executory Contracts and Unexpired Leases**.  The (i) transfer of the Assets to the Buyer and (ii) assignment to the Buyer of the Assumed Contracts, will not subject the Buyer to any liability whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Buyer in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Assumed Contracts is the best interests of the Debtors, their estates, and their creditors.  The Assumed Contracts being assigned to the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption and assignment of Assumed Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

U.    **Cure/Adequate Assurance**.  The Buyer has (i) cured, or has provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of Bankruptcy Code section 365(b)(1)(B).  The Buyer has provided or will provide adequate assurance of future performance of and under the Assumed Contracts within the meaning of Bankruptcy Code section 365(b)(1)(C).

V.    **Prompt Consummation**.    The sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.

W.    The evidence proffered or adduced by the Debtors at the Sale Hearing demonstrates compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, prior to, and outside of, a chapter 11 plan of reorganization.  In addition, consummation of the Sale Transaction will prevent the continuing accrual of interest and fees to the DIP Term Loan Lenders and the DIP Revolving Loan Lenders.

X.    **No Fraudulent Transfer**.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Buyer is not a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates and there is no continuity between the Buyer and the Debtors.  The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Buyer and any of the Debtors.

Y.    The evidence proffered or adduced at the Sale Hearing demonstrates that consideration provided by the Buyer for the Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

Z.     **Buyer Not an Insider and No Successor Liability**.  Immediately prior to the Closing Date, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Buyer and the Debtors.  The transfer of the Acquired Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale Transaction) to the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as a continuation of the Debtors.  The Sale does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors and/or the Debtors' estates.  There is not substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.

AA. **Legal, Valid Transfer**.  The transfer of the Assets to the Buyer will be a legal, valid, and effective transfer of the Assets, and will vest the Buyer with all right, title, and interest of the Debtors to the Assets free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), as set forth in the Asset Purchase Agreement.  The Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estate within the meaning of Bankruptcy Code section 541(a).  The Debtors are the sole and rightful owners of the Assets, and no other person has any ownership right, title, or interests therein.

BB. **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement.

CC. **Not a Sub Rosa Plan**.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

DD. **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is GRANTED and APPROVED in all respects.

2. Except as set forth herein, all objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Response to Formal and Informal Objections**

14

3.     Notwithstanding anything to the contrary in this Order:  (i) Oracle's Objection to, and Rights Reservation Regarding: (1) Debtors' Motion for An Order: (A) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief and (II) Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts [D.I. 286] (the "Oracle Objection"); (ii) the Objection of Ohio Power Company to the Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts [D.I. 287] (the "AEP Objection" and, together with the Oracle Objection, the "Counterparty Objections" and the objecting parties, the "Counterparty Objectors") are preserved and are not resolved by this Order, and the agreements by and between any Debtor and the respective Counterparty Objector shall not be sold, assumed or assigned without further order of the Court; provided, however, that if the any of the Counterparty Objections are consensually resolved, the relevant parties may submit an order under certification authorizing the assumption and assignment of any designated agreement.  For the avoidance of doubt, the Debtors and the Buyer reserve their rights to contest the Counterparty Objections if a consensual resolution cannot be reached and the Debtors may set a hearing to resolve the dispute, which hearing may be set upon not less than 5 Business Days' notice.

4.     Notwithstanding anything to the contrary in this Order, the (i) Objection of Liberty Mutual Insurance Company to Debtors' Sale, Assumption and Assignment of Insurance Policies [D.I. 284] (the "Liberty Mutual Objection") and (ii) Objection of Ace to Debtors' Motion for an Order: (A) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) Approving Assumption and Assignment of

Executory Contracts and Unexpired Leases; and (C) Granting Related Relief and (II) Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts [D.I. 285] (the "Ace Objection" and, together with the Liberty Mutual Objection, the "Insurance Provider Objections" and the objecting parties, the "Insurance Objectors") are preserved and are not resolved by this Order, and the agreements and/or insurance policies issued by the Insurance Objectors to the Debtors (the "Insurance Policies") shall not be assumed or assigned without further order of the Court; provided, however, that if the Ace Objection or the Liberty Mutual Objection is consensually resolved, the relevant parties may submit an order under certification authorizing the assumption and assignment of any designated Insurance Policies.  For the avoidance of doubt, the Debtors and the Buyer reserve their rights to contest the Insurance Provider Objections if a consensual resolution cannot be reached and the Debtors may set a hearing to resolve the dispute, which hearing may be set upon not less than 5 Business Days' notice.

5.    Notwithstanding anything to the contrary in this Order, the Objection of Impala Warehousing (US) LLC to Assumption and Assignment of Executory Contracts (the "Impala Objection") [D.I. 310] is preserved and is not resolved by this Order, and the agreements by and between any Debtor and the Impala Warehousing (US) LLC ("Impala") shall not be sold, assumed or assigned without further order of the Court; provided, however, that if the Impala Objection is consensually resolved, the parties may submit an order under certification authorizing the assumption and assignment of any designated agreement.  For the avoidance of doubt, the Debtors and the Buyer reserve their rights to contest the Impala Objection if a consensual resolution cannot be reached and the Debtors may set a hearing to resolve the dispute, which hearing may be set upon not less than 5 Business Days' notice.

6.     If the conditions set forth in Section 10.23 of the Asset Purchase Agreement, are satisfied, including, without limitation, ratification of the Hannibal Restructuring Memorandum of Agreement, then, upon Closing, the Buyer will assume the Hannibal CBA, as amended by the Hannibal Restructuring Memorandum of Agreement, and the Burnside CBA (provided such Collective Bargaining Agreements have not been amended, altered or otherwise modified in any respect, without Buyer's written consent, after the date of execution of the Hannibal Restructuring Memorandum of Agreement), and Buyer will: (a) retain in employment all bargaining unit employees who, immediately prior to the Effective Date, retained or were accruing seniority under the Hannibal CBA and Burnside CBA, as applicable, without regard to whether or not such person was actively at work; (b) provide for all bargaining unit employees to retain seniority or accrued service for all purposes under the Hannibal CBA and Burnside CBA, as applicable; (c) to recognize the USW as the bargaining agent for each of the relevant bargaining units;  (d) adopt the Hannibal CBA (as modified) and the Burnside CBA, and all associated agreements; and (e) continue to pay all obligations owing under the Hannibal CBA and Burnside CBA, as applicable, including, but not limited to, obligations arising before the Effective Date (as defined in the Hannibal Restructuring Memorandum of Agreement), except as they relate to the Defined Benefit Plans, claims asserted by the Steelworkers Pension Trust relating to withdrawal liability and the cessation of contributions thereto, and the Benefit Trust (as defined in the Hannibal CBA).

**Approval of the Sale of the Assets**

7.     The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

8.     Pursuant to Bankruptcy Code section 363(b), the sale of the Assets to the Buyer free and clear of all obligations, liabilities and Encumbrances (except Permitted

Encumbrances and the Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

## Sale and Transfer of Assets

9.     Pursuant to Bankruptcy Code section 363(b), the Debtors are hereby authorized and directed to sell the Assets to the Buyer and consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including, without limitation, the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement.

10.     Pursuant to Bankruptcy Code sections 363(b) and 363(f), the Assets shall be transferred to the Buyer upon consummation of the Asset Purchase Agreement (the "Closing Date") free and clear of all obligations, liabilities and Encumbrances (except for Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever, including without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in Bankruptcy Code section 101(5)) based on any taxes or successor or

transferee liability, including, without limitation all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal or state tax laws or doctrines of successor or transferee liability.

11.    Following the Closing, the Debtors or the Buyer are authorized to file certified copies of this Order with any necessary federal, state, or local governmental agency or department, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities and Encumbrances in the Assets of any kind or nature whatsoever other than the Permitted Encumbrances and Assumed Liabilities.  On the Closing Date, this Order shall be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in such Assets to the Buyer.  On the Closing Date and subject to paragraphs 3-6 herein, this Order also shall be construed, and constitute for any and all purposes, a complete and general assignment of all right, title and interest of the Debtors and each bankruptcy estate to the Buyer in the Assumed Contracts.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

12.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

13.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

14.     Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in a Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets or the operation of the Assets before the Closing Date, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns, their respective property and the Assets, such persons' or entities' liens, claims, Encumbrances, or other interests.

15.     On the Closing Date of the Sale Transaction, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances (other than Permitted Encumbrances) on the Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

16.     To the extent provided by Bankruptcy Code section 525, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

17.     Subject to the terms and conditions of this Order, the transfer of the Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all Encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities).

**No Successor Liability**

18.     The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, other than the Assumed Liabilities, with respect to the Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Asset Purchase Agreement and any documents related thereto. Except to the extent the Buyer assumes Assumed Liabilities and is ultimately permitted to assume the Assumed Contracts pursuant to the Asset Purchase Agreement, neither the purchase of the Assets by the Buyer nor the fact that the Buyer is using any of the Assets previously operated by the Debtors will cause the Buyer to be deemed a successor in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any

foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

19.     The Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances and liabilities (except for Permitted Encumbrances and the Assumed Liabilities) in or against the Debtors, or the Assets. Upon consummation of the Sale Transaction, the Buyer shall not be deemed to (a) be the successor to the Debtors, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors.

20.     Except to the extent the Buyer otherwise specifically agreed in the Asset Purchase Agreement or this Order, the Buyer shall not have any liability, responsibility or obligation for any claims, liabilities or other obligations of the Debtors or their estates, including without limitation, any claims, liabilities or other obligations related to the Assets prior to Closing Date. Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Encumbrances and liabilities (except for Permitted Encumbrances and the Assumed Liabilities) against, in or to the Debtors or the Assets. For the purposes of paragraphs 18 through 20 of this Order, all references to the Buyer shall include the Buyer's affiliates, subsidiaries, its present or contemplated members and shareholders.

**Good Faith**

21.      The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in Bankruptcy Code section 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not affect the validity of the sale of the Assets to the Buyer.  The Buyer is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Bankruptcy Code section 363(m).

22.      As a good faith purchaser of the Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale Transaction may not be avoided pursuant to Bankruptcy Code section 363(n).

23.      The Buyer, the Agent and the Prepetition Term Loan Lenders are released from any liability related to or arising from the submission of the Credit Bid.

**Assumption and Assignment of Assumed Contracts**

24.      Pursuant to Bankruptcy Code sections 105(a) and 365, and subject to and conditioned upon the closing of the Sale Transaction and subject to paragraphs 3-6 herein, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed Contracts is hereby approved, and the requirements of Bankruptcy Code section 365(b)(1) with respect thereto are hereby deemed satisfied.

25.      Subject to paragraphs 3-6 herein, the Debtors are hereby authorized and directed in accordance with Bankruptcy Code sections 105(a), 363 and 365 to (a) assume and

assign to the Buyer, effective upon the Closing Date of the Sale Transaction, the Assumed Contracts free and clear of all Encumbrances of any kind or nature whatsoever (except for Permitted Encumbrances) and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer.

26.    Subject to paragraphs 3-6 herein, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in Bankruptcy Code sections 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Buyer, except as provided in the Asset Purchase Agreement.

27.    Subject to paragraphs 3-6 herein, all defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be cured by the Buyer at the Closing Date or as soon thereafter as reasonably practicable, and the Buyer shall have no liability or obligation arising or accruing prior to the Closing Date, except as otherwise expressly provided in the Asset Purchase Agreement.  The Buyer may elect to take assignment of certain contracts and leases previously omitted from Schedule 2.01(a)(vi) of the Asset Purchase Agreement (the "Previously Omitted Contracts") after the Closing.  Upon designation of such Previously Omitted Contracts as Assumed Contracts by the Buyer, the Debtors shall serve a notice on the counterparties to such Previously Omitted Contracts that identifies the Buyer of the Assets and provides notice that the

Debtors are assuming and assigning the Previously Omitted Contracts to the Buyer. The counterparties will have fifteen (15) Business Days to object to the Cure Cost or the assumption. If the counterparties, the Debtors and the Buyer are unable to reach a consensual resolution with respect to an objection to the Cure Cost or assumption of a Previously Omitted Contract, the Debtors will seek an expedited hearing before the Court to determine the Cure Costs and approve the assumption. If there is no objection, then the Debtors will obtain an order of this Court fixing the Cure Cost and approving the assumption by the applicable Debtor(s) and assignment to the Buyer of the Previously Omitted Contract.

28.    Subject to paragraphs 3-6 herein, each non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts. Subject to paragraphs 3-6 herein, any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of Bankruptcy Code section 365(e)(2)(A)(ii) and otherwise if such party failed to object to the assumption and assignment of such Assumed Contract.

29.    Subject to paragraphs 3-6 herein, to the extent a counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Cost shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to

or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall completely revive any Assumed Contract to which it relates.

**Additional Provisions**

30.     The consideration provided by the Buyer for the Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

31.     Each and every federal, state, and local governmental agency, court or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. On the Closing Date, the Debtors and the Buyer are authorized to take such actions as may be necessary to obtain a release of any and all obligations, liabilities and Encumbrances (other than Permitted Encumbrances and the Assumed Liabilities) in the Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement. This Order (a) shall be effective as a determination that, on the Closing Date, (i) all Encumbrances of any kind or nature whatsoever existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, (ii) the Credit Bid portion of the Allowed Prepetition Term Loan Secured Claim is deemed exchanged for a pro rata share of the interests in the Buyer, and (iii) at Closing, the Prepetition Term Loan Lenders shall be deemed to be bound by the Limited Liability Company Agreement of Smelter Acquisition LLC (as amended or restated from time to time) without any further action, approval or consent by the Agent or any Prepetition Term Loan Lender or further court order, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Assets. All entities described in this paragraph are authorized to strike all such recorded liens, claims, rights, interests and encumbrances against the Assets from their records, official and otherwise.

32. If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, encumbrances, or interests in any of the Assets does not deliver to the Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Assets, the Debtors and/or the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Assets.

33.    The Debtors will cooperate with the Buyer and the Buyer will cooperate with the Debtors, in each case to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement (including, without limitation, adding such specific assets to such documents  as may be reasonably requested by the Buyer pursuant to the terms of the Asset Purchase Agreement).

34.    The Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets other than for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors, the Assets or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

35.    Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Encumbrance against or in the Debtors or the Assets of any kind or nature whatsoever.  The sale, transfer, assignment and delivery of the Assets and the Assumed Contracts shall not be subject to any Encumbrance, and Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances) shall remain with, and continue to be obligations of, the Debtors.  All persons holding Encumbrances against, on, or in the Debtors or

the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances) against the Buyer, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the Assets with respect to any Encumbrance of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Assets. Following the Closing Date, no holder of an Encumbrance in the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Assets and the Assumed Contracts based on or related to such Encumbrance, or any actions that the Debtors may take in their Chapter 11 Cases.

36.     Consistent with the terms of the Asset Purchase Agreement and in accordance with the Wind Down Budget, the Buyer is authorized and directed to deposit cash in an amount equal to the estimated wind down expenses into a designated escrow account (the "Wind Down Expense Escrow"). Funds in the Wind Down Expense Escrow shall not constitute property of the Debtors' estates and the funds deposited therein shall be used to satisfy the administrative costs and expenses the Debtors expect to incur in connection with winding down their bankruptcy estates and shall remain subject to the liens in favor of the Agent and the Prepetition Term Loan Lenders. Funds in the Wind Down Expense Escrow may be released for the payment of: (i) anticipated and accrued and unpaid Administrative Claims incurred in the ordinary course of the Debtors' business and administration of their estates without further order of the Court; (ii) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (iii) fees payable to the Clerk of this Court; and (iv) professional fees and expenses incurred by professionals retained by an order of the Court (the "Retained Professional Fees") in connection

with the administration of the Chapter 11 Cases upon entry of an order or orders allowing all or a portion of the Retained Professional Fees and no further order of the Court shall be required for payment of such fees from the Wind Down Expense Escrow.  Additional funds held in the Wind Down Expense Escrow may be released in the manner provided in the Asset Purchase Agreement, without further order of this Court, and upon the closing of the Chapter 11 Cases, any funds remaining in such escrow shall be paid to Buyer without any further order or approval. The funds held in the Wind Down Expense Escrow shall not be subject to disgorgement, avoidance or clawback by any party including, without limitation, the Buyer, the Revolving Loan Secured Parties, any of the Debtors' successors or assigns, or any trustee appointed in the Debtors' Chapter 11 Cases or upon the conversion of any of such cases to cases under chapter 7 of the Bankruptcy Code; provided that nothing in this paragraph 36 shall prejudice the Buyer's right to compel a refund of any funds remaining in the Wind Down Expense Escrow upon (a) payment in full of the Administrative Claims in accordance with the Wind Down Budget, (b) payment in full of the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (c) payment in full of the fees payable to the Clerk of this Court; (d) payment in full of the Retained Professional Fees; and (e) the closing of the Chapter 11 Cases.  For the avoidance of doubt, except as set forth herein, no liens shall attach to the funds in the Wind Down Expense Escrow.

37.    The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Encumbrances on the Assets to be sold to the Buyer pursuant to

the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

38.    The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

39.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Asset Purchase Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

40.    Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under applicable police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Asset Purchase Agreement authorizes transfer to the Buyer of any licenses, permits, registrations, or other governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers, except to the extent otherwise authorized by such applicable law.  Notwithstanding the foregoing, nothing in this Order shall be interpreted to deem the Buyer as the successor to the Debtors under any law

successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the entry of this Order.

41.     Nothing contained in any plan of reorganization or liquidation confirmed in these Chapter 11 Cases or any order of this Court confirming such plans or in any other order in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order.  The provisions of this Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Asset Purchase Agreement shall continue in these Chapter 11 Cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates and the Buyer and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

42.     The provisions of this Order are nonseverable and mutually dependent.

43.     To the extent applicable, the automatic stay pursuant to Bankruptcy Code section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all actions permitted by the Asset Purchase Agreement.

44.     There are no brokers involved in consummating the Sale Transaction and no brokers' commissions are due.

45.     The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby.

46.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order is effective immediately upon entry.

47.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer free and clear of Encumbrances (other than the Permitted Encumbrances), or

compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Assets or Assumed Contracts, or (iii) any claims of Encumbrances asserted on or in the Debtors or the Assets, of any kind or nature whatsoever.

48.    To the extent that any provision of this Order conflicts with the Asset Purchase Agreement, this Order shall control.

Dated: Wilmington, Delaware
       May _____, 2013

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE