## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ORMET CORPORATION, et al.[1]<br>Debtors. | Chapter 11<br><br>Case No. 13-10334 (MFW)<br><br>(Jointly Administered)<br><br>Re: D.I. 1506 |

### ORDER (I) APPROVING SETTLEMENT AGREEMENTS AND (II) APPROVING THE SALE OF REMAINING ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") (D.I. 1506)[2] dated September 30, 2014 of the above-captioned debtors and debtors-in-possession (each a "Debtor" and, collectively, the "Debtors") for, among other things, entry of an order (the "Order"): (i) approving the Sunstone Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) approving the Salaried VEBA Settlement Agreement (together with the Sunstone Settlement Agreement, the "Settlement Agreements") pursuant to Rule 9019 of the Bankruptcy Rules, and (iii) approving the sale (the "Sale Transaction") of all of the Debtors' remaining assets (as further defined in the Asset Purchase Agreement (defined below), the "Purchased Assets") to Buyer free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances") pursuant to the terms of the Asset Purchase Agreement (the

---

[1]    The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Ormet Corporation (2006); Ormet Primary Aluminum Corporation (9779); Ormet Aluminum Mill Products Corporation (9587); Specialty Blanks Holding Corporation (7019); and Ormet Railroad Corporation (0379). The service address for all of the Debtors for purposes of these chapter 11 cases is: 43840 State Route 7, Hannibal, Ohio 43931.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement, as applicable.

7268383v8

"<u>Asset Purchase Agreement</u>"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, and 6006 of the Bankruptcy Rules and Rule 6004-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"); and (iv) granting certain related relief; and the Court having held a hearing on October 23, 2014 (the "<u>Hearing</u>") to approve the Settlement Agreements and Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the objections to the Motion, if any, and (c) the arguments of counsel made, and the testimony and other evidence proffered or adduced at the Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Hearing and the chapter 11 cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

      A.    **Jurisdiction and Venue**. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.    **Predicates for Relief**. The predicates for the relief sought in the Motion and granted pursuant to this Order are Bankruptcy Code sections 105, 363 and 365, as supplemented by Bankruptcy Rules 2002, 6004, and 6006 and Local Rule 6004-1(b).

      C.    **Petition Date**. On February 25, 2013 (the "<u>Petition Date</u>"), Ormet Corporation and each of its Debtor subsidiaries commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

D.    **Notice**. As evidenced by the affidavits of service filed with the Court (See D.I. 1511, 1526, 1540), and based on the representations of counsel at the Hearing, the testimony and other evidence adduced at the Hearing and the record of the chapter 11 cases, (i) proper, timely, adequate and sufficient notice of the Motion, the Hearing, the Settlement Agreements, and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(l), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Hearing, the Settlement Agreements, and the Sale Transaction is or shall be required.

E.    **Corporate Authority**. The record reflects that: (i) each Debtor has full corporate power and authority to execute the Settlement Agreements and Asset Purchase Agreement and all other documents contemplated thereby, and the settlements and sale of the Purchased Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) each Debtor has all of the corporate power and authority necessary to consummate the transactions contemplated by the Settlement Agreements and Asset Purchase Agreement, (iii) each Debtor has taken all corporate action and formalities necessary to authorize and approve the Settlement Agreements and Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, as required by their respective organizational documents, and (iv) no government, regulatory or other consents or approvals, other than those expressly provided for in the Settlement Agreements or Asset Purchase Agreement, as applicable, are required for the Debtors to enter into the Settlement Agreements or Asset Purchase Agreement, as applicable, including for the and consummation of the Sale Transaction.

F.  **Authorized Representative**.  The Trustee of the Salaried VEBA Trust is the "authorized representative" as such term is defined in section 1114(b)(1) of the Bankruptcy Code, and has the authority to enter into the Salaried VEBA Settlement Agreement on behalf of the Salaried VEBA Trust.

G.  **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel for the Creditors' Committee; (iv) all entities known to have asserted any Encumbrances in or upon the Purchased Assets; (v) all federal, state and local regulatory or taxing authorities or recording offices which are reasonably ascertainable by the Debtors to have a known interest in the Purchased Assets; (vi) the United States Attorney's office (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) the Pension Benefit Guaranty Corporation; and (x) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases.

H.  **Best Interest**.  The evidence reflects that consummation of the Settlement Agreements and the sale of the Purchased Assets pursuant to the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

I.  **Business Justification**.  The evidence reflects that sound business reasons exist for the Settlement Agreements and the Sale Transaction.  Entry into the Settlement Agreements and the Asset Purchase Agreement, and the consummation of the transactions contemplated thereby, including the Sale Transaction, constitutes each Debtor's exercise of sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest.  The Court finds that each Debtor has articulated good and sufficient business reasons

4

justifying the Settlement Agreements and the Sale Transaction. Such business reasons include, but are not limited to, the following: (i) the Settlement Agreements avoid costly litigation and fairly reflect the uncertainties and costs of litigation; (ii) the Asset Purchase Agreement constitutes the highest and otherwise best offer for the Purchased Assets and presents the best opportunity to realize the maximum value of the Purchased Assets; and (iii) unless the Sale Transaction and all of the other transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, as provided for in the Motion and pursuant to the Asset Purchase Agreement, the Debtors will incur additional expenses that could diminish the estate.

J.      The terms and conditions of the Settlement Agreements and Asset Purchase Agreement, including, without limitation, the consideration to be realized by the Debtors under the terms of the Asset Purchase Agreement, are fair and reasonable. Approval of the Motion as set forth herein, the Settlement Agreements and the Asset Purchase Agreement and the transactions contemplated thereby, including, without limitation, the Sale Transaction, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

K.      **Arms-Length Sale**. The evidence demonstrates that the Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and Buyer without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n). Specifically, Buyer has not acted in a collusive manner with any person.

L.      **Good Faith Buyer**. The evidence demonstrates that Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under Bankruptcy Code section 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.

Specifically: (i) Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the consideration provided by Buyer in connection with the Sale Transaction has been fully and adequately disclosed; (iii) no common identity of directors or officers exists among the Debtors and Buyer; (iv) the negotiation and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of Buyer and the Debtors were represented by competent counsel of their choosing; (v) Buyer did not in any way induce or cause the chapter 11 filing of the Debtors; and (vi) Buyer has not acted in a collusive manner with any person. Buyer will be acting in good faith within the meaning of Bankruptcy Code section 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

M. **Diminution Claim**. The Pre-Petition Term Loan Secured Parties have a valid diminution claim in an amount that exceeds the expected value that may be recoverable under the Causes of Action.

N. **Credit Bid**. The Pre-Petition Term Loan Secured Parties are secured creditors of the Debtors holding valid, binding, enforceable and perfected security interests in, on and against the Debtors, their estates and property of the estates, arising in connection with the Pre-Petition Term Loan Agreement. The Pre-Petition Term Loan Secured Parties hold an allowed secured claim in the aggregate amount of not less than $130,887,988.56 (the "Allowed Pre-Petition Secured Claim"), which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the DIP Order. The lenders under the Debtors' Term Loan DIP Agreement (as defined in the DIP Order) (the "DIP Term Loan Lenders") are secured creditors of the Debtors holding valid, binding, enforceable and perfected security

interests in, on and against the Debtors, their estates and property of the estates, arising in connection with the Term Loan DIP Agreement. The DIP Term Loan Lenders hold an allowed secured claim in the aggregate amount of up to $1,500,000.00 (the "Allowed Post-Petition Secured Claim"), which claim is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent allowed under the DIP Order. Pursuant to the DIP Order, the Pre-Petition Term Loan Secured Parties and the DIP Term Loan Lenders were authorized to credit bid any or all of their respective Allowed Pre-Petition Secured Claim and/or the Allowed Post-Petition Secured Claim.

O.     Pursuant to the agreement under the Asset Purchase Agreement and sections 363(b) and 363(k) of the Bankruptcy Code, the Buyer shall credit bid (i) all of the Allowed Post-Petition Secured Claim, (ii) $7,500,000 of the Allowed Pre-Petition Secured Claim and (iii) all of the Secured Diminution Claim (the "Credit Bid"). Subject to the occurrence of the Closing Date, the Credit Bid is binding on the Pre-Petition Term Loan Secured Parties and the DIP Term Loan Lenders.

P.     **Free and Clear**. Except as provided in Paragraph 40 of this Order, the Debtors may sell the Purchased Assets free and clear of all obligations, liabilities, interests and Encumbrances because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances who did not object, withdrew, or failed to prosecute objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to Bankruptcy Code section 363(f)(2).

Q.      Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated hereby, including, without limitation, the Sale Transaction (i) if the transfer of the Purchased Assets were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if Buyer would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability.    Buyer will not consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction, unless this Court expressly orders that none of the Buyer, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including, without limitation, rights or claims based on any taxes, successor or transferee liability, except as provided in Paragraph 40 of this Order.

R.      Not transferring the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever including, without limitation, rights or claims based on any taxes, successor or transferee liability as provided for in this Order, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

S.      Without limiting the generality of the foregoing, none of Buyer, its respective affiliates, their respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests relating to any U.S. federal, state or local income tax liabilities, that the Debtors incur in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction (except for the Assumed Liabilities, as contemplated by the Asset Purchase Agreement).

T.      **Prompt Consummation**. The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and Buyer intend to close the Sale Transaction as soon as reasonably practicable.

U.      The evidence proffered or adduced by the Debtors at the Hearing demonstrates compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption prior to, and outside of, a chapter 11 plan of reorganization.

V.      **No Fraudulent Transfer**. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Buyer is not a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates and there is no continuity between Buyer and the Debtors.

The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of Buyer and any of the Debtors.

W.    The evidence proffered or adduced at the Hearing demonstrates that consideration provided by Buyer for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

X.    **No Successor Liability**. The transfer of the Purchased Assets to Buyer does not, and will not, subject Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability. Buyer is not purchasing the Purchased Assets with the intention of operating as an aluminum smelter or otherwise. The Sale Transaction does not amount to a consolidation, merger or de facto merger of Buyer and the Debtors and/or the Debtors' estates. There is not substantial continuity between Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and Buyer. Buyer is not a mere continuation of the Debtors or the Debtors' estates, and Buyer does not constitute a successor to the Debtors or the Debtors' estates.

Y.      **Legal, Valid Transfer**.  The transfer of the Purchased Assets to Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances, as set forth in the Asset Purchase Agreement and any related assignment or consent.  Except as provided in the Escrow Agreement, dated as of December 12, 201,3 by and among Almatis, Inc., Ormet Corporation and JPMorgan Chase Bank, N.A. (the "Almatis Escrow Agreement"), the Purchased Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estate within the meaning of Bankruptcy Code section 541(a).  Except as provided in the Almatis Escrow Agreement, the Debtors are the sole and rightful owners of the Purchased Assets, and no other person has any ownership right, title, or interests therein.

Z.      **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement.

AA.     **Not a Sub Rosa Plan**.  The consummation of the Settlement Agreements and Sale Transaction does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Settlement Agreements and Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors, or any other sort of restructuring.

BB.     **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**It is therefore ORDERED, ADJUDGED, AND DECREED THAT:**

11

**General Provisions**

1.      The Motion is GRANTED and APPROVED as set forth herein.

2.      Except as set forth herein, all objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

3.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order is effective immediately upon entry.

4.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Approval of the Settlement Agreements**

5.      The Settlement Agreements are approved in their entirety.

6.      The Debtors are authorized to enter into: (i) the Sunstone Settlement Agreement, a substantially final form of which is attached hereto as Exhibit 1 and (ii) the Salaried VEBA Settlement Agreement, a substantially final form of which is attached hereto as Exhibit 2, and to take any and all such actions as may be required to comply with the terms the Settlement Agreements, including funding the Salaried VEBA Settlement Payment. For the avoidance of doubt, Buyer is authorized to fund the Sunstone Settlement Payment required under the Sunstone Settlement Agreement.

7.      Immediately upon the occurrence of the Closing Date, Claim No. 366, as set forth in the official claims register in case of Ormet Corporation, Case No. 13-10334 shall be deemed satisfied by virtue of the Debtors' payment of the Salaried VEBA Settlement Payment and the Debtors obligations under section 1114 of the Bankruptcy Code shall be deemed satisfied. Claim No. 367, as set forth in the official claims register in the case of Ormet Corporation, Case No. 13-10334 shall be unaffected by the Salaried VEBA Settlement Agreement.

8.    The releases granted under the Settlement Agreements are hereby granted and approved in all respects.

9.    Immediately upon occurrence of the Closing Date, Wayzata shall pay Sunstone the sum of $473,388 in accordance with the Sunstone Settlement Agreement. Notwithstanding anything to the contrary contained in this Order, Sunstone shall retain a claim of $473,388 in and to the Sunstone Escrow proceeds until such time as Wayzata pays to Sunstone the sum of $473,388.

10.    The failure specifically to include any particular provisions of the Settlement Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Settlement Agreements be authorized and approved in their entirety.

**Approval of the Sale of the Purchased Assets**

11.    The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

12.    Pursuant to Bankruptcy Code section 363(b), the sale of the Purchased Assets to Buyer free and clear of all obligations, liabilities, interests, and Encumbrances and the transactions contemplated thereby is approved in all respects, except as provided in Paragraph 40 of this Order.

**Sale and Transfer of Purchased Assets**

13.    Pursuant to Bankruptcy Code section 363(b), the Debtors are hereby authorized and directed to sell the Purchased Assets to Buyer and consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement, and to transfer and assign all of the Debtors' right, title and interest (including common law rights) to all property and rights to be conveyed in accordance with and subject to the terms and conditions

13

of the Asset Purchase Agreement, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may be reasonably requested by Buyer for the purposes of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement.

14.     Except as provided in Paragraph 40 of this Order, pursuant to Bankruptcy Code sections 363(b) and 363(f), the Purchased Assets shall be transferred to Buyer upon consummation of the Asset Purchase Agreement (the "Closing Date") free and clear of all obligations, liabilities, interests, and Encumbrances of any kind or nature whatsoever, including without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in Bankruptcy Code section 101(5)) based on any taxes or successor or transferee liability, including, without limitation all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal or state tax laws or doctrines of successor or transferee liability.

15.     Following the Closing Date, the Debtors or Buyer are authorized to file certified copies of this Order with any necessary federal, state, or local governmental agency or

department, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, liabilities, interests and Encumbrances in the Purchased Assets of any kind or nature whatsoever. On the Closing Date, this Order shall be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Buyer. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

16.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to Buyer on the Closing Date, or at such other time as such party would be otherwise obligated to surrender possession of the Purchased Assets.

17.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to Buyer, or Buyer to take possession of the Purchased Assets, in accordance with the Asset Purchase Agreement and this Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

18.     Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims

based on any taxes or successor or transferee liability, against or in a Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets or the operation of the Purchased Assets before the Closing Date, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction are forever barred, estopped, and permanently enjoined from asserting against Buyer, its respective successors and assigns, their respective property and the Purchased Assets, such persons' or entities' liens, claims, Encumbrances, or other interests.

19.     On the Closing Date of the Sale Transaction, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances on the Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

20.     Subject to the terms and conditions of this Order, the transfer of the Purchased Assets to Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever, except as provided in Paragraph 40 of this Order.

**No Successor Liability**

21.     Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, with respect to the Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Asset Purchase Agreement and any documents related thereto.

22.     Buyer has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances and liabilities in or against the Debtors or the Purchased Assets except as provided in Paragraph 40 of this Order.   Upon consummation of the Sale Transaction, Buyer shall not be deemed to (a) be the successor to the Debtors, (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors.

**Good Faith**

23.     The transactions contemplated by the Asset Purchase Agreement are undertaken by Buyer in good faith, as that term is used in Bankruptcy Code section 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer.   Accordingly, the Buyer is purchasing the Purchased Assets in good faith, and is entitled to all of the protections afforded by Bankruptcy Code section 363(m).

24.     As a good faith purchaser of the Purchased Assets, Buyer has not entered into an agreement with any other potential bidders, and has not colluded with any of the other bidders,

potential bidders or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale Transaction may not be avoided pursuant to Bankruptcy Code section 363(n).

**Release by the Debtors**

25.    In exchange for all of the consideration provided by Buyer and Wayzata Investment Partners and its affiliated funds (collectively, "Wayzata") in connection with the Sale Transaction as set forth in the Asset Purchase Agreement, including, but not limited to, the waiver and release of any and all claims and causes of action Wayzata has against the Debtors and their officers, directors and professionals, including the waiver of the deficiency claims under the Pre-Petition Term Loan Agreement, Buyer's agreement to waive and release all Avoidance Actions against third parties, and Buyer's agreement to fund the Wind Down Expense Escrow (as defined in the Asset Purchase Agreement), the Debtors hereby forever release and waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities against Wayzata and its officers, directors and agents and representatives, including counsel, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Closing Date in any way relating to the Debtors, their chapter 11 cases, the Sale Transaction, or the Settlement Agreements, and that could have been asserted by or on behalf of the Debtors or their estates, whether directly, indirectly, derivatively or in any representative or any other capacity.

**Additional Provisions**

26.     The consideration provided by Buyer for the Purchased Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

27.     Each and every federal, state, and local governmental agency, court or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  On the Closing Date, the Debtors and Buyer are authorized to take such actions as may be necessary to obtain a release of any and all obligations, liabilities, interests and Encumbrances in the Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement. This Order (a) shall be effective as a determination that, on the Closing Date, all Encumbrances of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date (except as provided in Paragraph 40 of this Order) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset

Purchase Agreement. Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Purchased Assets. All entities described in this paragraph are authorized to strike all such recorded liens, claims, rights, interests and encumbrances against the Purchased Assets from their records, official and otherwise.

28.    If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, encumbrances, or interests in any of the Purchased Assets does not deliver to the Debtors or Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Purchased Assets, the Debtors and/or Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Purchased Assets.

29.    The Debtors will cooperate with Buyer and Buyer will cooperate with the Debtors, in each case to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement.

30.    Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets. Without limiting the generality

of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and Buyer shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors, the Purchased Assets or any obligations of the Debtors arising prior to the Closing Date, except as provided in Paragraph 40 of this Order.

31.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Encumbrances on the Purchased Assets to be sold to Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

32.     The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

33.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Asset Purchase

Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

34.     Nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases or any order of this Court confirming such plans or in any other order in these chapter 11 cases, including any order entered after any conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order.  The provisions of this Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting these chapter 11 cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Asset Purchase Agreement shall continue in these chapter 11 cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates and the Buyer and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

35.     The provisions of this Order are nonseverable and mutually dependent.

36.     To the extent applicable, the automatic stay pursuant to Bankruptcy Code section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow Buyer to take any and all actions permitted by the Asset Purchase Agreement.

37.    This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to Buyer free and clear of Encumbrances or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect Buyer against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Purchased Assets, or (iii) any claims of Encumbrances asserted on or in the Debtors or the Purchased Assets, of any kind or nature whatsoever.

38.    To the extent that any provision of this Order conflicts with the Asset Purchase Agreement, this Order shall control.

39.    For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, no provision of this Order authorizes, or shall be deemed to authorize, the Debtors to sell property that they do not own or that does not constitute "property of the estate" within the meaning of Section 541 of the Bankruptcy Code, and the rights of all parties in interests, to assert that any of the Purchased Assets, or portions thereof, do not constitute "property of the estate" within the meaning of section 541 of the Bankruptcy Code are expressly preserved hereby.

40.    For the avoidance of doubt, nothing in this Order shall release or discharge the Buyer or the funds held in escrow pursuant to the Almatis Escrow Agreement purchased by Buyer from any claim, obligation or responsibility that the Buyer has agreed to assume pursuant

to Sections 2.03 and 5.03 of the Asset Purchase Agreement or the related assignment or consent

agreement and subject to the limitations set forth therein.

Dated: Wilmington, Delaware
       October 23 , 2014

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE